# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WILLIAM ARGEL,<br><br>            Plaintiff,<br><br>    v.<br><br>GODWIN, *et al.*,<br><br>            Defendants. | Case No.  1:21-cv-00597-NONE-BAM (PC)<br><br>ORDER DENYING MOTION TO APPOINT COUNSEL WITHOUT PREJUDICE<br>(ECF No. 18)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM<br>(ECF No. Nos. 15, 19)<br><br>**FOURTEEN (14) DAY DEADLINE** |

**I.    Background**

Plaintiff John William Argel ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983.

On September 16, 2021, the Court screened Plaintiff's second amended complaint and issued an order granting Plaintiff leave to file a third amended complaint or a notice of voluntary dismissal within thirty (30) days. (ECF No. 17.)  The Court expressly warned Plaintiff that the failure to file an amended complaint in compliance with the Court's order would result in a recommendation for dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim.  (*Id.* at 16.)

In lieu of filing a third amended complaint, on October 14, 2021, Plaintiff filed a motion to appoint counsel and a response to the screening order.  (ECF Nos. 18, 19.)  In his response,

Plaintiff sets forth objections to the screening order, but does not indicate that he intends to file a third amended complaint. (ECF No. 19.) The Court construes Plaintiff's response as an indication that he wishes to stand on the allegations in the second amended complaint. The Court will therefore issue findings and recommendations based on a screening of the allegations in the second amended complaint. Plaintiff is informed that he may re-raise his objections to the screening by filing them as objections to the instant findings and recommendations.

## II. Motion to Appoint Counsel

In his third motion to appoint counsel, Plaintiff states that he cannot afford to hire a lawyer, and his imprisonment will greatly limit his ability to litigate this case. (ECF No. 18.) Plaintiff argues that the case is complex, and will likely involve substantial investigation and discovery, and he needs help to amend. Plaintiff states that a lawyer is needed for issues involving the health and safety of Plaintiff and the general population, and to apply the law properly in briefs and before the Court. A trial would likely involve conflicting testimony, and a lawyer would assist Plaintiff in the presentation of evidence and cross-examination of opposing witnesses. Plaintiff has made repeated efforts to obtain a lawyer. (*Id.*)

As Plaintiff has been informed, he does not have a constitutional right to appointed counsel in this action, *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *rev'd in part on other grounds*, 154 F.3d 952, 954 n.1 (9th Cir. 1998), and the court cannot require an attorney to represent plaintiff pursuant to 28 U.S.C. § 1915(e)(1). *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 298 (1989). However, in certain exceptional circumstances the court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). *Rand*, 113 F.3d at 1525.

Without a reasonable method of securing and compensating counsel, the Court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, a district court must evaluate both the likelihood of success on the merits [and] the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved." *Id.* (internal quotation marks and citations omitted).

///

2

The Court has considered Plaintiff's request, but does not find the required exceptional circumstances. Even if it is assumed that Plaintiff is not well versed in the law and that he has made serious allegations which, if proved, would entitle him to relief, his case is not exceptional. This Court is faced with similar cases filed by prisoners who are proceeding *pro se* and *in forma pauperis* almost daily. These litigants also must conduct legal research and litigate their cases without the assistance of counsel.

Furthermore, at this stage in the proceedings, the Court cannot make a determination that Plaintiff is likely to succeed on the merits. Plaintiff's second amended complaint has been screened, and the Court has found that it does not state any cognizable claims. Despite being provided with the applicable legal standards and an opportunity to file a third amended complaint, Plaintiff has opted to stand on the allegations in the second amended complaint.

Finally, based on a review of the record in this case, the Court does not find that Plaintiff cannot adequately articulate his claims.

**III.     Failure to State a Claim**

    **A.     Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

### B.   Plaintiff's Allegations

Plaintiff is currently housed at Pleasant Valley State Prison ("PVSP"), in Coalinga, CA, where the events in the second amended complaint appear to have taken place. Plaintiff names the following defendants: (1) Ron Godwin, Warden, PVSP; (2) Scott Frauenhiem, former Warden, PVSP; (3) Toni Clarke, Health Care CEO of CDCR; and (4) Primary care provider [DOE defendant]. Defendants are sued in their individual and official capacities.

Plaintiff alleges that he arrived at PVSP in February 2020 and the yard was on modified program as the result of two prior riots, which did not involve Plaintiff. But as punishment for the riots, "we were being starved with minimal portions of food on our trays." This went on for 2-3 months when he first arrived. Plaintiff got so hungry he would eat his toothpaste. "We" were not allowed to buy food at the commissary. After 2–3 months, "the food started getting better."

When Plaintiff first arrived, and COVID was starting to become a problem, he let the ADA attorneys know that staff members were not enforcing wearing masks and some treated COVID 19 as a joke and they didn't start testing everyone until November or December, after someone died. Plaintiff believes "they" were given COVID-19 on purpose.

Plaintiff was in building #4 on C yard in November 2020, and knew that at least one person on B yard had died. In November, Plaintiff was told he and everyone had to move out of building #4 even though no COVID was in his building. He was told he had to move to building #5 which had people with COVID housed there. Plaintiff got COVID in building #5.

Plaintiff is an ADA inmate and has Avuncular Nervosas in his hips. When Plaintiff first got to PVSP, he had a hip replacement on his right side. He was told it would be a full hip replacement, but Plaintiff later found out that it was only half so he still has problems on that side.

4

He has been told he needs a left side hip replacement.

Since his surgery, he has been moved to three different prisons over six years. The strongest medication he has been about to get for his hip problems is Tylenol 3. Since being at PVSP, he has tried to get ADA accommodation because of his difficulty in movement and getting up and down and a problem with his bladder. Plaintiff mentioned the problem to prison staff after they tried to move someone in his cell. The staff knew he was ADA and had him wear a yellow/green vest when he went to yard. Plaintiff filled out an ADA accommodations form and was denied without having an evaluation. He was told he would be getting a cellie even though there were at least 8 open cells with no one in them. COVID regulations say to stay six feet apart. But they moved in a man in his cell who was 350 pound and needed medical accommodations.

Plaintiff was then moved to building #5. Plaintiff said "they" tried to move in a larger man into his cell, but Plaintiff and the larger man's chronos were not compatible and they moved the man that night. Two weeks later, Plaintiff got COVID-19. Plaintiff was then moved to building #2, and Plaintiff told the staff that he needed an ADA cell. After a couple of weeks, "They" then moved Plaintiff into building #4. Plaintiff was moved to a non-ADA cell and "they" said that ADA cells were only for wheelchair users. At that time, there were only three inmates not in wheelchairs who were in the ADA cell in building #2. The next morning, after being moved out of the ADA cell into a non-ADA cell in building #2, one of the inmates who was not an ADA inmate, but in the ADA cell, asked staff if Plaintiff could switch with him so Plaintiff could have the ADA cell. Plaintiff was then moved to the ADA cell.

Plaintiff was then moved 2 weeks later to building #1. Staff told Plaintiff that they needed building #2 for COVID cases, but that was not true because other inmates who were not COVID were allowed to stay.

In building #1, Plaintiff was placed in a non-ADA cell then into an ADA cell. Then Plaintiff was moved to building #5 again. Plaintiff says he was moved 8 times in 2.5 months. During the moves, Plaintiff lost property or property was broken and he had a lot of stress.

Plaintiff has problems with his incoming and outgoing mail. He gets letters with nothing inside the envelope, missing mail, etc. Plaintiff alleges this is because of reprisals. Plaintiff had

5

filed a 602 appeal after the 350-pound man was put in his cell. Plaintiff was called out of his cell by a sergeant who told Plaintiff to "drop it" – the 602. He got his appeal back with the green form missing, which meant he could not appeal further. The prison will not give him his $600 stimulus money. It was sent back to the bank or destroyed and he could not get papers on his trust account.

When Plaintiff got to PVSP, he asked to go into the "M.A.T." program to help Plaintiff stop using drugs. Plaintiff filed 6 appeals and 50 health care forms and it took 6 months and he got into the program. Plaintiff also alleges that it is difficult to get any medical or dental care at PVSP. Plaintiff had to remove his mask for 30 seconds to let them see he took his medication which exposed him to COVID 19. On 3/3/21, Plaintiff's tests for a paralegal program were destroyed and destroyed his mail. Plaintiff alleges this is reprisals for filing "22 forms" and "602 forms."

When Plaintiff filled out the ADA accommodation form a second time, the person who interviewed him did not tell the whole truth. He said that Plaintiff told him he had "no problem," when Plaintiff had told him that he needed the handlebars and that his knees lock up.

On March 23, 2021, Plaintiff got the vaccine shot and he was sick for 5 days.

Plaintiff alleges that Toni Clarke failed to use due care by allowing inmates to be transferred from prison to prison during the pandemic, mismanagement of the pandemic, and Plaintiff's ADA accommodations, and waiting for 6 months to get Plaintiff into a drug program.

Defendant Scott Frauenheim is responsible for the mismanagement of the COVID pandemic, mismanagement of food to prisoners.

Defendant Ron Godwin is responsible for the mismanagement of the COVID pandemic, ADA discrimination, lack of ADA accommodation, proper staff training or lack of training, movement of inmates in light of the pandemic.

As remedies, Plaintiff seeks a "gag order" and injunctive relief against reprisals, for proper medical care, ADA accommodation, dental care, send and receive mail on time.

///

///

**C.     Discussion**

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 18 and 20 and fails to state a cognizable claim for relief.

### 1.     Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

As a basic matter, the complaint must clearly state what happened, when it happened or who was involved. Plaintiff was informed that an amended complaint should be a short and plain statement of his claims, identifying what happened, when it happened and who was involved. Fed. R. Civ. P. 8. Instead, Plaintiff's amended complaint reads like an inventory of all of Plaintiff's complaints of things that occurred during his time at PVSP. He does not identify what happened, when it happened, who was involved, and why such conduct violated his constitutional rights. As explained below, Plaintiff will not be permitted to proceed on misjoined claims.

### 2.     Linkage Requirement

The Civil Rights Act requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

///

Plaintiff's complaint does not link any of defendants to factual allegations. Plaintiff was previously informed that any amended complaint must allege what each defendant did or did not do that resulted in a violation of Plaintiff's rights. Instead, the complaint is a laundry list of various unrelated incidents while Plaintiff was incarcerated in PVSP.

### 3. Supervisor Liability

The gravamen of Plaintiff's complaint is that, by being moved multiple times and placed in with other inmates, he contracted COVID-19.

As Plaintiff was previously told, insofar as Plaintiff is attempting to sue the Wardens, or any other defendant, based solely upon his supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.,* 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must . . . demonstrate that his deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy." *Waggy v. Spokane Cty. Wash.*, 594 F.3d 707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in

civil rights violations are not sufficient. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff has failed to allege direct participation in the alleged violations. Plaintiff has failed to allege the causal link between each defendant and the claimed constitutional violation which must be specifically alleged. He does not make a sufficient showing of any personal participation, direction, or knowledge on these defendants' part regarding any other prison officials' actions. Plaintiff has not alleged that these defendants personally participated in the alleged deprivations.

In addition, it is unclear what the policy is that is purportedly at issue. Plaintiff has failed to "demonstrate that his deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy." Plaintiff alleges "COVID policies," but that conclusory allegation is sufficient. At best, Plaintiff is attempting to impose liability against these defendants based simply on their supervisory roles. There are no allegations to suggest that that these defendants participated in any violations of Plaintiff's rights or that they implemented any deficient policies that were the moving force of any constitutional violation.

### 4.     Federal Rules of Civil Procedure 18 and 20

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Mackey v. Price*, 2020 WL 7319420, at *3–4 (E.D. Cal. Dec. 11, 2020), report and recommendation adopted, 2021 WL 843462 (E.D. Cal. Mar. 5, 2021). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement refers to similarity in the factual background of a claim. *Id.* at 1349. Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

9

In the Court's prior screening order, Plaintiff was told that Plaintiff may not include a laundry list of several different incidents, as such incidents are not properly related. In the second amended complaint, Plaintiff appears to assert unrelated claims, denial of meals, contracting COVID, prison movement, retaliation, mail violations, ADA violations and many more. These matters are unrelated and Plaintiff may not bring claims for all such violations in one action. As Plaintiff is attempting to bring multiple claims that arose from different and unrelated occurrences, his complaint violates Federal Rules of Civil Procedure 18 and 20.

### 5. Eleventh Amendment Immunity

Plaintiff has sued each of the defendants in their official capacities. A suit against a public employee in his official capacity is equivalent to a claim against the employer, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Center for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008), cert. denied, 555 U.S. 1098 (2009). "Suits against state officials in their official capacity . . . should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a suit against the state of California).

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override . . . ." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert. denied, 538 U.S. 961 (2003). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court . . . ." *Dittman*, 191 F.3d at 1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v.*

*Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

To the extent that Plaintiff seeks damages from Defendants in their official capacities, the Eleventh Amendment bars Plaintiff's suit. *See Mitchell v. Washington*, 818 F.3d 436, 441 (9th Cir. 2016). To the extent Plaintiff seeks prospective declaratory or injunctive relief, only cognizable claims against them may go forward. *See Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997).

### 6. Eighth Amendment – Lack of Meals

To establish an Eighth Amendment claim, the prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). " 'Deliberate indifference' has both subjective and objective components." *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837. Adequate food is a basic human need protected by the Eighth Amendment. *See Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998). The Eighth Amendment right to food was clearly established as of at least 2001. *Foster v. Runnels*, 554 F.3d 807, 815 (9th Cir. 2009). Denial of food service presents a sufficiently serious condition to meet the objective prong of the Eighth Amendment deliberate indifference analysis. *Id.* at 812–13; *see, e.g.*, *id.* at 812 (denial of 16 meals over 23 days was "a sufficiently serious deprivation because food is one of life's basic necessities"); and *id.* at 812 n.1 (denial of 2 meals over 9-week period was not sufficiently serious to meet objective prong of Eighth Amendment deliberate indifference).

Plaintiff may be able to allege, objectively, Plaintiff's deprivation of food was sufficiently serious to form the basis of an Eighth Amendment claim. "The Eighth Amendment 'requires only that prisoners receive food that is adequate to maintain health.' " *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1259 (9th Cir. 2016) (citing Foster, 554 F.3d at 813 n.2). However,

Plaintiff does not set forth factual allegations showing that any specific defendant was subjectively aware of a serious risk to Plaintiff's health and that the defendant deliberately disregarded such risk. *See, e.g.*, *Foster*, 554 F.3d at 814. Moreover, he will not be permitted to proceed on any claims that are misjoined with this claim.

### 7. First Amendment – Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F. 2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005*)*; *accord Watison v. Carter*, 668 F.3d 1108, 1114–15 (9th Cir. 2012); *Silva*, 658 at 1104; *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Although Plaintiff contends that he was subjected to "reprisals," Plaintiff's allegations are insufficient to demonstrate any "adverse action" by any defendant that chilled Plaintiff's First Amendment rights and that did not reasonably advance a legitimate correctional goal. Plaintiff's conclusory allegations are insufficient. Plaintiff has failed to link defendants to his claim for retaliation. Further, this claim is improperly joined in violation of Rules 18 and 20.

### 8. First Amendment – Mail

Under the First Amendment, prisoners have a right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). However, a prison may adopt regulations or practices for inmate mail which limit a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, (1987). "When a prison regulation affects outgoing mail as opposed to incoming mail, there must be a 'closer fit between the regulation and the purpose it serves.' " *Witherow*, 52

F.3d at 265 (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 412 (1989)).  Courts have also afforded greater protection to legal mail than non-legal mail.  *See Thornburgh*, 490 U.S. at 413.  Isolated incidents of mail interference or tampering will not support a claim under section 1983 for violation of plaintiff's constitutional rights.  *See Davis v. Goord*, 320 F.3d 346, 351 (2d. Cir. 2003); *see also Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999) (emphasizing that a temporary delay or isolated incident of delay of mail does not violate a prisoner's First Amendment rights).  Generally, such isolated incidents must be accompanied by evidence of an improper motive on the part of prison officials or result in interference with an inmate's right of access to the courts or counsel in order to rise to the level of a constitutional violation.  *See Smith*, 899 F.2d at 944.

Plaintiff's conclusory allegations of isolated instances of interference with mail are insufficient to state a cognizable claim.  Further, this claim is improperly joined in violation of Rules 18 and 20.

### 9. ADA Accommodation

Plaintiff refers to the ADA and "reasonable accommodations," yet fails to specifically identify such accommodations, particularly in connection with any named defendant.  Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability.  42 U.S.C. § 12132 (1994); *Weinrich v. L.A. Cty. Metro Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).  In other words, the ADA is designed to challenge the denial of a benefit or service accorded similarly situated individuals—i.e., discrimination—"by reason of" the plaintiff's disability.  To state a claim under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability.  *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1021 (9th Cir. 2010); *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004); *Weinrich*, 114 F.3d at 978.  Here, plaintiff fails to state a cognizable ADA claim because he fails to allege facts meeting all of the required elements.

Plaintiff's reference to the "defendants," insufficiently identifies such individuals' roles in any constitutional violation and lacks any factual specificity whatsoever. Plaintiff claims they failed to act reasonably to protect plaintiff from their subordinates after plaintiff filed multiple administrative appeals. Such a conclusory statement is insufficient. *Ashcroft*, 556 U.S. at 678. Moreover, such claims are in not related to plaintiff's claims against defendants for denial of meals.

### 10. Transfer to Preferred Institution/Housing Assignment

Any claim premised on the Defendants' alleged failure to house Plaintiff at a particular institution or in particular housing fails because Plaintiff is not entitled to be transferred to any particular prison or to be housed in any particular housing. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976). In general, prison officials' housing and classification decisions do not give rise to federal constitutional claims encompassed by the protection of liberty and property guaranteed by the Fifth and Fourteenth Amendments. *Montayne v. Haymes*, 427 U.S. 236, 242 (1976) (It is well settled that prisoners have no constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment.); *accord King v. Lemos*, No. 1:20-CV-01837-NONE-BAM (PC), 2021 WL 2038187, at *6 (E.D. Cal. May 21, 2021).

### 11. Rehabilitation Program (M.A.T.)

Plaintiff's loss of privileges is not "sufficiently grave to form the basis of an Eighth Amendment violation." *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (deprivation of rehabilitation and educational programs does not violate the Eighth Amendment).

### 12. Plaintiff's Property

There is no cognizable § 1983 claim for deprivation of a property interest if the state provides an adequate post-deprivation remedy. *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–895) ("[A] negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy."). California law, through the Government Claims Act, provides an adequate post-deprivation remedy for property deprivations.

*E.g.*, *Barnett,* 31 F.3d at 816–17; *see also Nible v. Fink*, 828 F. App'x 463, 464 (9th Cir. 2020); *Maraglino v. Espinosa*, 796 F. App'x 451, 451 (9th Cir. 2020); *Burton v. Burton*, No. 2:20-cv-02395-JDP (PC), 2021 WL 352148, at *1 (E.D. Cal. Feb. 2, 2021); *Holt v. Alvarado*, 1:19-cv-00930-NONE-GSA-PC, 2020 WL 4922378, at *7 (E.D. Cal. Aug. 21, 2020).

California offers Plaintiff an adequate post-deprivation remedy for the alleged taking of his property. *See Barnett*, 31 F.3d at 816–17; *Nible*, 828 F. App'x at 464. Any due process claim cannot proceed.

### 13. Doe Defendants

The use of John Does in pleading practice is generally disfavored. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999); *Lopes v. Viera*, 543 F.Supp.2d 1149, 1152 (E.D. Cal. 2008). Plaintiff is hereby advised that the court cannot order service of a Doe defendant because the United States Marshal cannot serve a Doe defendant. Plaintiff will be required to identify him or her with enough information to locate the defendant for service of process. For service to be successful, the Marshal must be able to identify and locate defendants. Once the identity of a Doe defendant is ascertained, Plaintiff must file a motion to amend his complaint only to identify the identified Doe defendant so that service by the United States Marshal can be attempted.

## IV.  Conclusion and Recommendation

Accordingly, Plaintiff's third motion to appoint counsel, (ECF No. 18), is HEREBY DENIED, without prejudice.

Furthermore, the Court HEREBY RECOMMENDS that this action be dismissed, with prejudice, for failure to state a claim pursuant to 28 U.S.C. § 1915A.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual

findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **October 21, 2021**         /s/ Barbara A. McAuliffe          
                                                      UNITED STATES MAGISTRATE JUDGE